ROMERO V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-472-CR

KRISTINA MARIE ROMERO APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY CRIMINAL COURT NO. 2 OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Kristina Marie Romero appeals from her conviction for driving while intoxicated.  In two points, she contends that the trial court erred by refusing to give the jury an article 38.23 instruction and abused its discretion by allowing the State’s intoxilyzer expert to answer a hypothetical question that required the expert to employ the science of retrograde extrapolation over appellant’s rule 403 objection.  We affirm.

Just before 2 a.m. on July 25, 2003, Officer Greg Prickett pulled over appellant after following her and observing her driving “erratically.”  After talking to appellant and having her perform several field sobriety tests, Officer Prickett arrested appellant for suspected driving while intoxicated.  Appellant subsequently took two breath tests, which measured her blood alcohol concentration (BAC) at .126 and .122 respectively.  Appellant was charged with and subsequently convicted of driving while intoxicated. 

Article 38.23 Instruction

In her first point, appellant contends that the trial court erred by failing to include an article 38.23 instruction in the jury charge because she raised a fact issue as to the legality of the traffic stop.  
Tex. Code Crim. Proc. Ann.
 art. 38.23 (Vernon 2005).  According to appellant, the videotape of the stop shows that appellant did not turn abruptly or drive erratically as testified to by Officer Prickett.

Article 38.23 states that, in any case in which the evidence raises a fact issue as to whether it was obtained in violation of any provisions of the United States Constitution or laws of the State of Texas, “the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then . . . the jury shall disregard any such evidence so obtained.”  
Id
.; 
Garza v. State
, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004)
.  “A fact issue about whether evidence was legally obtained may be raised ‘from any source, and the evidence may be strong, weak, contradicted, unimpeached, or unbelievable.’”  
Garza
, 126 S.W.3d at 85 (citing 
Wilkerson v. State
, 933 S.W.2d 276, 280 (Tex. App.—Houston [1st Dist.] 1996, pet. ref’d)).  An article 38.23 instruction must be included in the jury charge only if there is a factual dispute about how the evidence was obtained.  
Id
.

Here, Officer Prickett testified that he noticed appellant because she changed lanes without signaling, then turned abruptly.  He noticed that appellant was driving “a little erratically” and at one point was “straddling the lane marker.”  He also testified that “[i]t [the car] wasn’t signaling . . . [and it] was making abrupt turns.”  On cross-examination, Officer Prickett testified that “the first turn, which I don’t believe was on video tape, if I remember correctly, [appellant] changed lanes, and then turned without signaling.  And it was all very abrupt.  That’s what brought my attention to her in the first place.”  He further testified that after his initial observation of appellant, she turned again abruptly without signaling until the last minute.  In response to questioning, Officer Prickett clarified that in the first turn, appellant “did not signal a hundred feet prior to the turn which was required by state law, which  is . . . a traffic violation.”  Then she abruptly turned onto northbound Bernard Street.  Officer Prickett explained that “[a]bruptly turning means that she waited until the last minute to turn, and it was done in an abrupt manner.” 

In his affidavit requesting an arrest warrant, Officer Prickett averred that on July 25, 2003, he “observed a maroon Jeep SUV turning abruptly at eastbound 800 Eagle Dr., Denton onto northbound Bernard St.  The vehicle then made the block and while southbound at 800 Welch St. failed to maintain a single lane, straddling the white line divider.  [Officer Prickett] then initiated a traffic stop at 1000 Eagle Dr.” 

The videotape of the stop appears to start as appellant is driving on northbound Bernard.  The tape shows appellant turning left very quickly after signaling.  As appellant is traveling westbound, she applies her brakes twice in the middle of the road, slowing down.  She then slows for a stop sign and activates her turn signal.  The video shows that after appellant turns left (southbound), she crosses or “straddles” the white line in the center of the road.  She then turns left again, at which point Officer Prickett activates his lights.  Appellant then turns right into an apartment parking lot.

We hold that the videotape does not raise a fact issue as to the legality of the stop.  Officer Prickett testified that appellant committed a traffic violation when he first saw her driving:  she failed to signal within 100 feet of changing lanes.  
See
 
Tex. Transp. Code Ann.
 § 545.104(b) (Vernon 1999); 
Tyler v. State
, 161 S.W.3d 745, 748 (Tex. App.—Fort Worth 2005, no pet.) (“When a traffic violation is committed in an officer’s presence, the officer has probable cause to lawfully stop and arrest or detain the violator.”).  Appellant’s first turn as described by Officer Prickett is not shown on the videotape, and there is no evidence contradicting Officer Prickett’s testimony.  Furthermore, the remainder of the stop as shown on the videotape is consistent with Officer Prickett’s testimony.  Although it is arguable whether the last two turns appellant made could be interpreted as being “abrupt,” the first turn shown on the videotape does appear to be “abrupt” in that the time between appellant’s signaling and turning is very short.  In addition, the videotape confirms Officer Prickett’s testimony that appellant “straddled” the white dividing line when she turned southbound onto Welch.  
See James v. State
, 102 S.W.3d 162, 172 (Tex. App.—Fort Worth 2003, pet. ref’d) (“
Erratic . . . driving may furnish a sufficient basis for a reasonable suspicion that [a] driver is intoxicated even absent evidence of violation of a specific traffic law.”); 
cf. Tyler
, 161 S.W.3d at 749 (holding that “appellant’s act of moving out of his lane of traffic, ‘straddling’ the white line separating the traveling lane from the shoulder, and ‘erratically’ re-entering his lane of traffic at an angle was unsafe and therefore a violation of section 545.060(a).”)
.  The videotape does not raise a fact issue as to whether Officer Prickett had probable cause to stop appellant.  Thus, we hold that the trial court did not err by denying appellant an article 38.23 instruction.  
See Estrada v. State
, 30 S.W.3d 599, 605 (Tex. App.—Austin 2000, pet. ref’d).  We overrule appellant’s first point.

Admissibility of Expert Testimony Under Rule 403

In her second point, appellant contends that the trial court abused its discretion by allowing the State’s intoxilyzer expert to answer the following hypothetical question:  “If you assume that a 125 pound woman had a tuna sub at 7 p.m. and had one shot of vodka at 9 p.m., is there any way that that person would have a .126 and a .122 five hours later?”
(footnote: 2)  The expert answered no.  Appellant contends that the probative value of the testimony was substantially outweighed by the danger of unfair prejudice because the expert had to employ the science of retrograde extrapolation to answer the question and was “short on the 
Mata
 factors.”  
See
 
Tex. R. Evid.
 403; 
Mata v. State
, 46 S.W.3d 902 (Tex. Crim. App. 2001).

Mata
 involved the reliability of retrograde extrapolation evidence.  
Mata
, 46 S.W.3d at 904.
(footnote: 3)  We note that although appellant complains in her point that the State’s expert was “short” on the 
Mata
 factors required to establish the expert’s reliability for purposes of giving retrograde extrapolation testimony, even a liberal construction of her point does not include the complaint that the State’s expert was unqualified to answer the question under rule 702 because appellant has not challenged the retrograde extrapolation testimony that the expert later provided.  
See
 Tex. R. App. P
.
 38.9; Tex. R. Evid.
 403, 702.  In addition, the analysis of this point in appellant’s brief is structured in terms of the test for admissibility under rule 403, rather than rule 702.  
Tex. R. Evid.
 702; 
Mata
, 46 S.W.3d at 908; 
Kelly v. State
, 824 S.W.2d 568, 572-73 (Tex. Crim. App. 1992).  Thus, we will analyze appellant’s issue under rule 403.  
Tex. R. Evid.
 403.

A proper rule 403 analysis includes, but is not limited to, four factors:  (1) the probative value of the evidence;  (2) the potential to impress the jury in some irrational yet indelible way;  (3) the time needed to develop the evidence;  and (4) the proponent’s need for the evidence.  
State v. Mechler
, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005).  In reviewing the trial court’s determination of the probative and prejudicial value of evidence under rule 403, we will reverse the trial court only upon an abuse of discretion. 
 
Id
. at 439.  But reviewing for abuse of discretion in this context requires more than deciding that the trial judge did in fact conduct the required balancing between probative and prejudicial values; the trial court’s determination must be reasonable in view of all relevant facts.  
Rachal v. State
, 917 S.W.2d 799, 808 (Tex. Crim. App.), 
cert. denied
, 519 U.S. 1043 (1996).  Accordingly, if the record reveals that the probative value of the tendered evidence is substantially outweighed by unfair prejudice, then the trial court acted irrationally in admitting it and abused its discretion.  
Id. 

We will examine the first and fourth factors together:  how compellingly the evidence serves to make a fact more or less probable and the State’s need for the evidence.  Here, appellant contends that the evidence was of little probative value because the State’s expert was “short on the required factors listed in 
Mata
,” yet used the science of retrograde extrapolation to call appellant a liar.  According to appellant, whether her BAC at the time of testing could have resulted from the facts she told the officer (that she ate a tuna sub at 7 p.m. and had one shot at 9 p.m.) is irrelevant to the issue of whether or not she was intoxicated under either the per se or impairment definitions.

The State was not required to present retrograde extrapolation evidence to prove that appellant was intoxicated at the time of driving; the court of criminal appeals has held that intoxilyzer results are probative without retrograde extrapolation testimony.  
Mechler
, 153 S.W.3d at 440; 
Stewart v. State
, 129 S.W.3d 93, 97 (Tex. Crim. App. 2004).  In addition, although the fact that appellant lied to Officer Prickett about whether she had drunk alcohol that night is evidence that she had done so, it does not show how much she drank or how much she would have had to drink to be impaired.  Moreover, the State did not need this testimony to prove that appellant lied to Officer Prickett.  A review of the videotape of the stop shows that appellant told Officer Prickett at least twice that she had not had anything to drink that night.  She later told him she had had one shot at the bar.  But her breath test results taken approximately one hour later are evidence that she was intoxicated, and a preliminary breath test that Officer Prickett gave her at the scene showed that she had been drinking alcohol.
(footnote: 4)  In addition, Officer Prickett testified that appellant’s eyes were bloodshot and watery, her speech was slurred, he smelled alcohol on her breath, and she exhibited “clues” for intoxication as a result of the sobriety tests he administered.  Appellant also gave Officer Prickett different accounts of why she was upset and where she was going.  Therefore, we conclude that the testimony had little probative value regardless of the extent to which the witness was qualified under 
Mata 
and that the State did not have a great need for the evidence.  These two factors weigh in appellant’s favor.

The second factor—the testimony’s potential to impress the jury in some irrational yet indelible way—focuses on the danger of “unfair prejudice.”  
Mechler
, 153 S.W.3d at 440.  “‘Unfair prejudice’ refers only to relevant evidence’s tendency to tempt the jury into finding guilt on grounds apart from proof of the offense charged.”  
Id
.  Here, evidence that appellant lied to Officer Prickett about whether and how much alcohol she had drunk and when, although prejudicial to appellant, is evidence that she had been drinking alcohol, which is an element of the charged offense.  
See id
. Furthermore, the time needed to develop the evidence was minimal and would not have distracted the jury from its consideration of the charged offense.  
See id
.  Thus, we conclude that the second and third factors weigh in favor of the State.

In close cases, we should favor the admission of relevant evidence.  
Salazar v. State
, 90 S.W.3d 330, 338 (Tex. Crim. App. 2002); 
Montgomery v. State
, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh’g) (emphasizing that rule 403 excludes evidence if its probative value is 
substantially
 outweighed by danger of unfair prejudice).  Here, the probative value of the evidence and the State’s need for it are minimal.  But the danger of unfair prejudice is minimal as well.  As such, we cannot conclude that the trial court’s admission of the evidence was outside the “zone of reasonable disagreement.”  
Montgomery
, 810 S.W.2d at 391.  Accordingly, we hold that the trial court did not abuse its discretion in admitting the evidence over appellant’s rule 403 objection.

Moreover, even if the trial court had abused its discretion in admitting the evidence, we do not believe appellant was harmed by the admission of the evidence.  
See
 
Tex. R. App. P.
 44.2(b); 
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).  The complained-of evidence is essentially cumulative of other evidence that showed appellant was untruthful with Officer Prickett about whether she had drunk alcohol that night.  
See Bagheri v. State
, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003).  The State discussed the evidence in closing argument,  but it did so briefly and did not emphasize it over any other evidence.  
See id
.  In addition, considering the entire record, there is ample evidence of probative character that appellant committed the offense of driving while intoxicated under either the per se or impairment theories as charged.  
See id.
;
 Motilla v. State
, 78 S.W.3d 352, 355-56 (Tex. Crim. App. 2002).  We overrule appellant’s second point.

Having overruled both of appellant’s points, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: LIVINGSTON, HOLMAN, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  October 6, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
Appellant told Officer Prickett twice that she had not had anything to drink that night; later she told him that she had had one shot.  She also told Officer Prickett that the last thing she had to eat was a tuna sub at 7 p.m.

3:
Retrograde extrapolation is the computation back in time of a person's BAC.  
Id
. at 908-09.  In a DWI case, it is used to determine the BAC at the time of driving based on test results obtained at a later time.  
Id
.  We note that here the expert did not have to employ 
retrograde
 extrapolation to answer the question.  Instead of using appellant’s BAC at the time of the breath test to compute appellant’s blood-alcohol level at the time of driving, the State’s expert was asked to determine whether certain characteristics of appellant—based on appellant’s answers to Officer Prickett during the stop—could have resulted in her eventual test results.  But the science involved—the rate at which the body absorbs and eliminates alcohol—is essentially the same.  
See generally id
. at 909.  

4:
The breath test administered at the stop only tested for the presence of alcohol on the breath; it did not provide a specific BAC measurement.