Peter Zapata GARZA, Appellant,

v.

The STATE of Texas.

No. 1691–02.

Court of Criminal Appeals of Texas.

Jan. 28, 2004.

---

12. TEX.R.APP. P. 59.1.

80

Steven J. Lieberman, Houston, for Appellant.

Carmen Castillo Mitchell, Asst. DA, Houston, Matthew Paul, State's Attorney, Austin, for State.

### OPINION

MEYERS, J., delivered the opinion of the Court, in which KELLER, P.J., and PRICE, JOHNSON, KEASLER, HERVEY, HOLCOMB, and COCHRAN, J.J., joined.

The question in this case deals with preservation of error. Appellant was

convicted of possession with intent to distribute cocaine. TEX. HEALTH & SAFETY CODE ANN. arts. 481.102(3)(D), 481.112(a) (Vernon Supp.2002). Police stopped appellant's van after he made an illegal left turn, and while checking his driver's license, they learned he had two outstanding arrest warrants. Upon arresting appellant, the officers performed an inventory search on the van and discovered what appeared to be drug paraphernalia sitting in an open box in plain view. Shortly thereafter, one of the officers found what appeared to be a diaper wrapped tightly in a plastic bag. Inside the diaper was a white substance, which tested positively as cocaine, weighing 28.75 grams.

Prior to trial, appellant filed a motion to suppress the evidence seized from the van during the inventory inspection, and requested a separate hearing on that motion. The trial court denied the request for a separate hearing, stating:

> Now we have a motion for a hearing, motion to suppress outside the presence of the jury. That's going to be denied for this reason: If I grant your motion, they're not going to have any evidence, so they would be subject to an instructed verdict because they don't have any evidence to proceed on, and if I deny your motion, it doesn't make any difference, the jury gets to hear it all anyway.

Both the State and appellant concede that the trial judge directed the motion to suppress to be carried with trial.

At trial, the officers testified as to the search of appellant's van, the seizure of drug paraphernalia, and the seizure of two bags of a white substance that tested positively as cocaine. Appellant did not object to that testimony. Appellant also did not object to the chemist's testimony that the white substance found in the van was cocaine weighing 28.75 grams. Later, when the State attempted to offer into evidence the drug paraphernalia and the cocaine seized during the search, appellant urged his motion to suppress outside of the jury's presence and objected on the ground that the officers' search of the van was outside the scope of a proper inventory search. The trial court denied the motion. On appeal, the Court of Appeals held that appellant's objection, at the time the State offered the actual exhibits, was untimely. The court concluded that appellant had waived error by failing to object at the time the officers and the chemist had testified. Garza v. State, No. 01–00–00625–CR, 2002 WL 1585900 (Tex.App.Houston [1st. Dist.] July 18, 2002) (not designated for publication).

Appellant asserts two grounds for review. First, he contends that because the hearing on the motion to suppress and the jury trial were conducted in a unitary proceeding, he correctly preserved error by re-urging his motion to suppress at the introduction of the physical evidence seized from the van. In his second ground for review, appellant argues that the trial court should have given him a jury instruction pursuant to Article 38.23 of the Texas Code of Criminal Procedure because a fact issue was presented at trial regarding the legality of the search of his van. We agree with appellant's first ground for review and we remand to the Court of Appeals. But because the Court of Appeals correctly affirmed the trial court's decision on the jury instruction issue, we overrule appellant's second ground for review.

## Discussion

### Preservation of Error

■ To preserve error, the record must show that appellant made a timely request, objection, or motion, and that the trial

court ruled on it.[1] Tex.R.App. P. 33.1(a)(1); *Nelson v. State*, 626 S.W.2d 535, 536 (Tex. Crim.App.1981). There are two main purposes behind requiring a timely, specific objection: 1) to inform the judge of the basis of the objection and give him the chance to make a ruling on it, and 2) to give opposing counsel the chance to remove the objection or provide other testimony. *Zillender v. State*, 557 S.W.2d 515, 517 (Tex.Crim.App.1977). By affording the judge an opportunity to rule on an objection, he is able to decide whether the evidence is admissible. If the judge decides the evidence is inadmissible, the jury is shielded from hearing it.

Appellant contends that the Court of Appeals decision conflicts with two cases, namely *Morrison v. State*, 71 S.W.3d 821 (Tex.App.Corpus Christi 2002, no pet.), and *Gearing v. State*, 685 S.W.2d 326 (Tex. Crim.App.1985). Although we agree with the appellant that he did preserve error, we believe both of these cases are distinguishable from appellant's case. In *Gearing*, the defendant filed a pretrial motion to suppress the introduction into evidence of a pistol obtained during a search of defendant's vehicle. 685 S.W.2d at 326. As in appellant's case, the trial court did not rule on the motion to suppress, but suggested that the motion be carried with trial and discussed when the issue was raised. *Id.* at 329. The court heard trial testimony about the evidence at issue, and the defendant did not object to that testimony. Later, when the State moved to introduce the pistol into evidence, the defendant's attorney explicitly stated "no objection." *Id.* Appellant urges that his case is procedurally the same as *Gearing*, and reads *Gearing* to mean that when the trial and the hearing on the motion to suppress are conducted in *any* unitary proceeding, and the court rules on the motion to suppress, error has been preserved. Because *Gearing* decides the merits of the case without effectively ruling on the preservation of error issue, we reject such a broad interpretation.

Certain *dicta* by the Court in *Gearing* taints the decision with incertitude. Specifically, the Court ends the case with the following paragraph:

> It would appear [defendant] waived the error, if any, unless it can be argued that in permitting counsel to argue the pretrial motion after trial and ruling upon the same, *the court in an unorthodox manner allowed the preservation of error.* Be that as it may, no error in our opinion is presented upon consideration of the merits.

685 S.W.2d at 330 (emphasis added). The ambiguity of this quoted portion introduces a number of problems. For one, it is difficult to ascertain if the Court conclusively decided whether error was preserved, because the opinion skips most of the preservation of error analysis and instead moves directly to the merits of the case. The three-paragraph error analysis by the Court sets out basic law, but it does

---

1. Rule 33.1 states:
 33.1 Preservation; How Shown. (a) In general. As a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion that: (A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and (B) complied with the requirements of the Texas Rules of Civil or Criminal Evidence or the Texas Rules of Civil or Appellate Procedure; and (2) the trial court: (A) ruled on the request, objection, or motion, either expressly or implicitly; or (B) refused to rule on the request, objection, or motion, and the complaining part objected to the refusal.

not draw any specific conclusions relating to the law as it applies to the facts of the case. The introductory phrase, "[i]t would appear [the defendant] waived the error . . . ," suggests the Court implicitly decided that the defendant waived preservation of error. *Id.* at 329. But, the Court then alludes to the notion that it may have found that error was preserved, when it states ". . . unless . . . the court in an unorthodox manner allowed the preservation of error." *Id.* The Court does not, however, explicitly say whether it did or did not allow the preservation of error in this unorthodox way. Instead, the Court decides the case on the merits, without ever specifically ruling on the preservation of error issue, by stating "[b]e that as it may, no error in our opinion is presented upon consideration of the *merits.*" *See Gearing,* 685 S.W.2d at 330 (emphasis added).

Even if one could argue that the Court found that error *was* preserved, the "unorthodox" exception in *Gearing* would not apply here. *Gearing* was a *bench* trial, whereas appellant's case is a *jury* trial. In a bench trial, the judge often will learn the substance of the evidence before he can rule on the motion to suppress. The judge is presumed to disregard the inadmissible evidence if the court is called on to decide the merits of the case. In essence, the judge assumes dual roles: He acts as a judge in ruling on the admissibility of the evidence, and he acts as a juror in weighing the credibility of the evidence. Consequently, the time at which a motion is re-urged or a ruling is obtained is not as crucial, because the judge, as fact-finder, is aware of the substance of the motion regardless of when the defendant finally argues it. Conversely, in a *jury* trial, the timing of an objection and ruling is much more important because, if the objection is not made early enough and a ruling is not obtained, the jury is able to hear evidence which it might never have heard at all.

An additional problem with *Gearing* is that it is unclear whether, if the Court indeed found that error was waived, the Court decided so because the defendant failed to receive a ruling on the pre-trial motion, because the defendant's attorney stated "no objection" at trial, or because of a combination of both. The Court states only that "the appellant failed to obtain a pre-trial ruling on the said motion, *and* stated 'no objection' at trial upon the offer of the pistol." *Gearing,* 685 S.W.2d at 329 (emphasis added). If the Court found error was waived primarily because there was no pre-trial ruling, then *Gearing* actually weakens appellant's arguments, since appellant did not obtain a pre-trial ruling on his motion. If, on the other hand, the Court's decision was mostly based on a combination of *both* factors (the failure to get a pretrial ruling, and the statement "no objection"), appellant's case lies in a gray area, because appellant's counsel did not state "no objection." The point is that the language in *Gearing* makes it difficult to determine the weight the Court gave each of the factors in its decision, and more importantly, fails to effectively communicate for what proposition of law the decision stands. Because of the foregoing reasons, *Gearing* is not controlling in appellant's case.

*Morrison* is procedurally indistinguishable from *Gearing;* therefore, appellant faces many of the same difficulties just discussed. In *Morrison,* as in *Gearing,* the defendant filed a pretrial motion to suppress contraband, and the motion was carried with trial for the judge to consider it "at the same time the trial proceeds." *Morrison,* 71 S.W.3d at 824. At the bench trial, the arresting officer testified about the seizure of the contraband, and a chemist attested that the contraband was co-

caine. *Id.* The defendant did not speak, however, until the State moved to introduce the actual cocaine into evidence, at which time the defense counsel affirmatively stated "no objection." *Id.* Similarly to *Gearing*, the judge permitted the parties to argue the merits of the motion to suppress after the State had rested its case in chief. The judge then denied the motion to suppress. Relying on *Gearing*, the appellate court admitted its course of conduct was "unorthodox," but nevertheless held that because it was a "unitary proceeding," the appellant had preserved error. *Morrison*, 71 S.W.3d at 826. As mentioned, *Gearing* and *Morrison* are procedurally the same. Most importantly, *Morrison* was also a bench trial. Such an "unorthodox" course of conduct would not be appropriate in a jury trial such as appellant's.

 Although we do not find *Gearing* and *Morrison* to be applicable in this case, we do agree with appellant that he preserved error. It is generally accepted that, "[w]hen a court overrules a pretrial motion to suppress evidence, the defendant need not subsequently object to the admission of the same evidence at trial to preserve error." *Ebarb v. State*, 598 S.W.2d 842 (Tex.Crim.App.1980); *Gearing v. State*, 685 S.W.2d 326, 329 (Tex.Crim.App. 1985), *overruled on other grounds, Woods v. State*, 956 S.W.2d 33 (Tex.Crim.App. 1997). Here, however, the judge did not rule on the pre-trial motion to suppress; rather, the judge directed it to be carried with trial. The case *Thomas v. State*, 884 S.W.2d 215 (Tex.App.El Paso 1994, pet. ref'd), is factually similar to appellant's case. In *Thomas*, the defendant was charged with possession of cocaine and filed a pre-trial motion to suppress. No pre-trial hearing was held, and the motion to suppress was carried with trial. As in appellant's case, the defendant did not object until after two policemen had testified about the facts underlying the case, including how they discovered a needle containing cocaine residue. *See id.* The court ultimately held that because there was no pretrial hearing or ruling, and because the motion to suppress was carried with trial, "the mere filing of the motion to suppress did not preserve error, and [the defendant] was required to make a timely objection at trial in order to do so." *Id.* at 216. The court continued, stating that "[a]lthough [the defendant] later urged his motion to suppress outside the presence of the jury and objection to the admission of the syringe on the same grounds ... he failed to object at the earliest opportunity, and by so doing, waived error." *Id.* at 216–217.

Appellant's situation differs from the defendant's situation in *Thomas*, however, because the judge told appellant's attorney that he would hear the evidence as it was presented before the jury, commenting that, "[i]f I grant your motion, [the jury is] not going to have any evidence, so they would be subject to an instructed verdict ... and if I deny your motion [to suppress], it doesn't make any difference, the jury gets to hear it all anyway." The judge further stated, "any other ruling that either side wishes to make, then you will be instructed to approach the bench outside the presence of the jury and then we'll make a determination as to that." Though the general rule would require appellant to object and obtain a ruling at the earliest opportunity, the specific pretrial comments made by the judge in this case essentially directed appellant to wait until all the evidence was presented before he obtained any ruling from the judge. From these comments, it is clear that any additional attempt by appellant to object or obtain a ruling during the testimony of the officers would have been futile, because the judge had already told appellant that he would not rule on the motion until

the jury had heard the evidence. Appellant was reasonable to interpret those comments as an instruction to seek a ruling at the conclusion of the State's presentation of evidence, and not sooner.

Our holding today is not meant to apply in situations outside the special circumstances of this case. Here, the motion to suppress dealt with an issue that would have been completely decisive of the case, and the judge told appellant that he would make no ruling until all the testimony had been presented. The special instructions by the judge were such that appellant preserved error by seeking a ruling after the officers' and expert's testimony had been given.

We therefore reverse the decision of the Court of Appeals on appellant's first ground for review and remand the issue for additional analysis.

### Article 38.23 Instruction

■■■ In appellant's second ground for review, he argues that the Court of Appeals erred in holding that it was not error for the trial court to deny appellant's request for an Article 38.23 jury instruction regarding the legality of the search of his van. TEX.CODE.CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.2002). Article 38.23 states that, in any case where the evidence raises a fact issue as to whether it was obtained in violation of any provisions of the United States Constitution or laws of the State of Texas, "the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then ... the jury shall disregard any such evidence so obtained." TEX.CODE CRIM. PROC. ANN. art. 38.23 (Vernon Supp. 2002). A fact issue about whether evidence was legally obtained may be raised "from any source, and the evidence may be strong, weak, contradicted, unimpeached, or unbelievable." *Wilkerson v. State*, 933 S.W.2d 276, 280 (Tex.App.Houston [1st Dist.] 1996). It must be noted, however, that an Article 38.23 instruction must be included in the jury charge only if there is a factual dispute about how the evidence was obtained. *Id.; Thomas v. State*, 723 S.W.2d 696, 708 (Tex.Crim.App.1986).

The Court of Appeals held that the appellant was not entitled to an Article 38.23 instruction because he failed to present or elicit testimony that raised a fact question regarding whether the officers: 1) prepared a written inventory slip, 2) violated any of the Harris County Sheriff's Department ("HCSD") inventory search policies, or 3) exceeded the scope of a proper inventory search. *Garza v. State*, No. 01–00–00625–CR, at 11, 2002 WL 1585900. Appellant urges that his attorney's examination of the witnesses did raise a fact issue as to whether the officers conducted the search of appellant's vehicle pursuant to HCSD guidelines. Specifically, he claims that the examination placed emphasis on whether the search of the diaper found in the van was an investigatory search for contraband conducted outside the scope of a valid inventory search.

Appellant relies primarily on *Atkinson v. State*, 923 S.W.2d 21 (Tex.Crim.App. 1996) in support of his argument. In *Atkinson*, the defendant was convicted of driving while intoxicated, evidenced in part by a chemical analysis of his breath. *Id.* at 22. The defendant claimed that there was a fact issue as to whether the law enforcement officers complied with the rules established by the Texas Department of Public Safety when they administered the breath test. *Id.* The Court held that the defendant was entitled to an Article 38.23 instruction, stating that, while a "mere noncompliance with administrative agency rules does not provide a basis for the exclusion of evidence under article 38.23," in defendant's case, there was a

statute which explicitly declared evidence to have been illegally obtained if it violated agency regulations.[2] *Id.* at 23, n. 1.

Atkinson is distinguishable in that there was a statute specifically declaring the violation of that agency rule a violation of the law. Appellant does not cite to any such statute here. Furthermore, appellant has failed to show that the officers strayed from the boundaries set in the HCSD rules. The HCSD rules were not even introduced into evidence. Without evidence of the content in the rules, appellant's attorney did nothing more than hint at the mere possibility that the officers *may* have breached the HCSD rules.

In the case *Wilkerson v. State,* 933 S.W.2d 276 (Tex.App.Houston [1st Dist.] 1996, pet. ref'd) (published in part), the defendant was arrested for possession of drugs discovered in his house. He claimed that if the jury believed his testimony, then no drug transaction could have occurred, and the search was illegal. The defendant urged that, because of the conflict in his testimony and the officer's testimony, he was entitled to an Article 38.23 instruction. The court stated that "[defendant's] testimony differs significantly from the State's version of the facts," and found that a fact issue had arisen as to the legality of the search; thus, the defendant

was entitled to an Article 38.23 instruction. *Id.* at 280. Appellant's case, however, is distinguishable. The testimony by appellant does not "differ significantly" from that of the officers. Appellant admitted that it is possible he could have run the red light because he was on the phone and not paying much attention, and he does not dispute how the officers discovered the drugs and the paraphernalia. Vague suggestions by appellant's counsel that the officers were on a fishing expedition, without more, do not rise to the level of creating a fact issue.[3] That appellant "disagrees with the *conclusion* that probable cause was shown as a matter of law" is not the same as appellant controverting the *facts. Luna v. State,* No. 03–97–00605–CR, 1999 WL 11183 (Tex.App.Austin, January 14, 1999), at 16. The question of whether the search was legal is a question of law, as none of the circumstances surrounding the search were controverted by appellant.[4]

A link can be established between *Thomas v. State,* 884 S.W.2d 215, *supra,* and appellant's case. In *Thomas,* the defendant was arrested after a weapons search of his body resulted in discovery of contraband. The defendant claimed that the search went beyond the legal scope and requested an Article 38.23 instruction. *Id.* The facts of the case showed that in

---

2. The statute read, "analysis of a specimen of the person's breath, to be considered valid ..., must be performed according to rules of the Texas Department of Public Safety[.]" Tex.Rev.Civ. Stat. Ann. art. 67011 5, section 3(a),(b) (West Supp.1995) (repealed 1993).

3. Appellant's attorney asked one of the officers: "Isn't it true, Officer, that the plain and simple matter is that you were looking, searching for illegal drugs or contraband that evening?" The officer responded, "Negative." Nothing further was said at that point regarding the illegality of the search. Later in the trial, appellant's attorney asked another officer: "Isn't it true you were out there looking for drugs and that was your purpose

there, Officer?" The officer replied, "We were inventorying the vehicle."

4. *Stone v. State,* 703 S.W.2d 652 (Tex.Crim. App.1986), also differs from appellant's case. In *Stone,* the defendant was arrested for driving while intoxicated, and he contested the legality of the stop. The defendant and a witness contested that defendant was driving imprudently. The Court held that a fact issue arose as to the validity of the *stop.* Here, appellant does not contest the reasons for the officers stopping his vehicle, and the facts surrounding the search are not disputed. For the same reasons as in *Wilkerson,* this case is not controlling.

the process of searching the outer clothing for a weapon, the officer had developed probable cause to search the defendant's pockets for contraband. The officer testified as to the circumstances of the search, and the defendant did not controvert those facts. *See id.* The court concluded that "[defendant's] testimony did not create a fact issue, and the trial court did not err in refusing the requested instruction." *Id.* at 218. In appellant's case, the officers testified that they began to suspect drugs were in his car when they discovered the Similac can in open view. Similarly to *Thomas,* appellant did not controvert the facts to which the officers testified. No fact issue arose as to the legality of the search.

During cross-examination, appellant's attorney made an attempt to elicit testimony that would produce doubt as to the existence of the inventory slip, but each of the officers testified that an inventory slip had been prepared. At no point did the examination result in testimony calling into question the very existence of the inventory slip. Mere insinuations by appellant's attorney that no inventory slip was made, in light of the testimony by each officer that such a slip did indeed exist, did not raise a fact issue as to the existence of the inventory slip.

As to whether any HCSD rules were broken, suggestions that some rules *may* have been broken are not enough to create a fact issue as to the *legality* of the search. *See Atkinson* at 22, n. 1 ("the violation of an agency regulation is not the same as a violation of the law"). As previously discussed, without proof of how the rules were broken, or more importantly, what the rules prescribed, it can hardly be said that appellant created a disputed issue of fact.

Upon examination of the record, we find few specific comments by appellant's attorney to the jury claiming that the scope of the inventory was exceeded. No dispute arose regarding the circumstances of the search, including the chain of events leading to the discovery of the drugs and paraphernalia. *See Thomas v. State,* 723 S.W.2d at 707 (defendant never controverted the facts surrounding his refusal to give a breath sample; thus, he was not entitled to an Article 38.23 instruction); *see also Standefer v. State,* No. 08–97–00641–CR, 2003 WL 22333195 (Tex.App.El Paso, Oct. 9, 2003), at 7 (the basis for the traffic stop was undisputed; no fact issue existed, so no Article 38.23 instruction was warranted). The only time appellant's attorney specifically addressed the scope of the search in front of the jury was briefly to two witnesses on cross examination,[5] and again during closing argument.[6] Simply averring two or three times that the officers had actually commenced the search to look for drugs, without more, does not raise a fact issue and cannot be seen as any more than an opinion or unsupported allegation. The jury's belief or disbelief of certain testimony at trial was irrelevant because the parties did not disagree as to *how* the evidence was found. The question

---

5. *See* testimony from the trial in footnote 3.

6. Appellant's attorney, in closing, stated to the jury:
 "Now, you have to decide, ... was the arrest and stop improper. (sic) We submit to you that it was and that the search that officers conducted and the evidence before you should not be admissible in this case because it was an improper stop....The question will be, do we allow this to happen, to be able to stop somebody, use a charge so that we can search and rummage through their vehicle and find whatever we are looking for? ... These officers weren't there to do an inventory. They were there to rummage through this man's vehicle and find whatever they could find because they had already suspected, because he had some outstanding warrants, that there was going to be something there."

of whether the scope of the search was within permissible boundaries was therefore a question of law, not a question of fact for the jury. *See Campbell v. State,* 492 S.W.2d 956 (Tex.Crim.App.1973); *Brooks v. State,* 707 S.W.2d 703, 706 (Tex. App.-Houston [1st Dist.] 1986, pet. ref'd) (where the essential facts concerning a search or an arrest are not in dispute, the legality of the search or arrest is a question of law, not of fact).

We agree with the Court of Appeals that no fact issues arose regarding the legality of the search of appellant's vehicle, and we therefore hold that the trial court did not err in failing to instruct the jury on this issue.

Because we find no error by the trial court in denying the instruction as to the legality of the search, we overrule appellant's second ground for review. But appellant did preserve his complaint about the denial of his motion to suppress. Thus, we remand the issue on the motion to suppress to the Court of Appeals for further consideration.

WOMACK, J., concurred in the judgment.